**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

SERGIO T. TORRES,

Petitioner,

v.

KEN CLARK,

Respondent.

_______________________________________/

1:10-cv-00339-DLB (HC)

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

[Doc. 1]

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge. Local Rule 305(b).

Following a jury trial in the Madera County Superior Court, Petitioner was convicted of assault by means of force likely to produce great bodily injury (Cal. Penal Code[1] § 245(a)(1)). The jury also found true that Petitioner personally used a deadly weapon (§ 12022(b)(1)) and personally inflicted great bodily injury (§ 12022.7(a)). In a bifurcated proceeding, the trial court found true that Petitioner suffered a prior strike conviction (§ 667(b)-(i)).

Petitioner filed a timely notice of appeal. On November 10, 2008, the California Court of Appeal, Fifth Appellate District affirmed the judgment.

Petitioner filed a petition for review in the California Supreme Court. The California Supreme Court denied the petition on February 11, 2009.

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

Petitioner did not file any post-conviction collateral petitions.

Petitioner filed the instant petition for writ of habeas corpus on September 30, 2009. Respondent filed an answer to the petition on October 27, 2010. Petitioner filed a traverse on June 30, 2011.

STATEMENT OF FACTS[2]

In the early morning hours of December 9, 2006, in the parking lot of a bar in Madera, an altercation occurred between Koren Eason and Alejandro Blanco. Eason thought Blacno had scratched or kicked her car and she hit him. Blanco grabbed Eason's hand to stop her. During the altercation, [Petitioner], also known as "Checko," came out of the bar and into the parking lot. [Petitioner] and Eason knew each other, and Eason told [Petitioner] what had happened.

[Petitioner] approached Blanco from behind and hit him until he fell to the ground. Blanco got up and [Petitioner] threw him to the ground. With Blanco on the ground, [Petitioner] pulled out something and stabbed Blanco in his left side. Blanco did not see the person who hit and stabbed him, but he could hear people yell, "Checko did it."

Joyce Lopez testified that she had been in the bar and left with others when the bar closed. In the parking lot, she witnessed the altercation between Eason and Blanco, and saw [Petitioner] stab Blanco. Lopez identified [Petitioner] in a photographic lineup and in court. According to Lopez, [Petitioner] was wearing a gray turtleneck, and she heard Eason identify him as "Checko." After the incident, Lopez saw [Petitioner] get in a car with Eason and drive off.

Ann Borrero had come to the bar that evening with Eason, but she was in the bar's restroom when the stabbing occurred. When she came outside right after the incident, she noticed Eason was gone and she heard everyone yelling, "Checko did it." Borrero knew [Petitioner] as "Checko" and knew that [Petitioner] and Eason used to date. Borrero later identified [Petitioner] in a photographic lineup.

After the incident, someone in the parking lot flagged down Officer Jason Gutknecht. Gutknecht saw Blanco holding a bloody shirt to his left side. Upon inspection, Gutknecht saw that Blanco had a puncture wound below his left armpit, a laceration on his nose, bruising on his left eye, and bloody lips. Blanco's stab wound required three staples and a two-day hospital day.

Officer Gutknecht spoke to both Lopez and Borrero. Lopez told him that [Petitioner's] name was Checko. Borrero told him that [Petitioner] was a Hispanic male and that he was wearing a gray turleneck and dark jeans.

Later that morning, Lopez was driving around town with some people when someone in the car received a phone call asking the person to pick up [Petitioner] and take him to the bar to retrieve his pickup. When [Petitioner] got into the vehicle, Lopez noticed that he was still wearing a gray turleneck. Lopez described [Petitioner] as "real hysterical, like something happened."

---

[2] The Court finds the Court of Appeal correctly summarized the facts in its November 10, 2008 opinion. Thus, the Court adopts the factual recitations set forth by the California Court of Appeal, Fifth Appellate District.

> Detective Hector Garibay investigated the stabbing and spoke to Eason. She told him that Blanco had grabbed her in the car that evening. When the bar closed, Blanco "keyed" her car. Eason admitted getting into a fight with Blanco, which she told [Petitioner] about before she got into her car to leave. Eason told Garibay that she was aware that a stabbing had occurred and she had heard [Petitioner] was involved. Eason told Garibay where [Petitioner] might be located.
>
> Detective Garibay's investigation revealed that "Checko" is short for "Sergio." Prior police contacts with [Petitioner] prompted the detective to use [Petitioner's] likeness in the photographic lineup shown to witnesses, including Lopez and Borrero.
>
> Detective Garibay located [Petitioner] and arrested him. [Petitioner] admitted to Garibay that he had gotten into a fight with someone at the bar that night but denied that he stabbed anyone. A search of [Petitioner's] residence found two small pocket knives and two gray sweatshirts.
>
> Defense Case
>
> The witnesses Lopez and Borrero had described Checko as being five feet seven inches tall and weighing 150 to 160 wounds. At trial, [Petitioner] was reported to be five feet ten inches tall and to weigh 185 pounds. A defense witness who was five feet seven inches tall and weighed 150 pounds was asked to stand next to [Petitioner] in front of the jury.
>
> The witness Lopez testified on direct that she saw Eason accusing Blacno of having damaged her car, a white, Jeep-like vehicle. Eason testified that she drove a gold Hyundai SUV on the night of the incident.

## DISCUSSION

### A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Madera County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114

F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B. Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams (Terry) v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id., quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (*per curiam*). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254

///

apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991). However, where the state court decided an issue on the merits but provided no reasoned decision, courts conduct "an independent review of the record . . . to determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

C. Admission of Prior Uncharged Act Evidence

Petitioner contends that his right to a fair trial was violated by the trial court's admission of evidence of an uncharged prior act. Petitioner raised this claim on direct review to the California Court of Appeal and California Supreme Court. Because the California Supreme Court's opinion is summary in nature, however, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

The Court of Appeal denied Petitioner's claim as follows:

> Appellant asserts that the trial court erred in admitting evidence of a prior stabbing incident because it was irrelevant to any disputed issue at trial. He also claims the evidence was more prejudicial than probative under Evidence Code section 352 and that, but for the admission of the prior stabbing evidence, it is reasonably probable a result more favorable to appellant would have been reached. Finally, he contends that admission of the uncharged act violated his right to due process of law and a fair trial. We disagree.

Procedural Background

Prior to trial, the prosecution made an Evidence Code section 1101, subdivision (b) motion to introduce evidence of an uncharged prior incident involving appellant. According to the prosecutor, the evidence would show that, in an incident that occurred outside a bar in May of 2006, appellant stabbed his cousin and then fled the scene. The prosecutor sought to introduce this evidence to show intent:

> "Clearly, intent is at issue here because [appellant] pled not guilty. This demonstrates that [appellant] on more than one occasion has gotten angry and intended to injure someone by stabbing them. And this ... prior act would show his intent in this case that this wasn't an accident."

Defense counsel argued that the event, which took place six months prior, was not material to show appellant "stabs people" when he gets angry. Defense counsel also argued that the evidence could "confuse[ ] the issue in an undue [length] of time" and was "unduly prejudicial."

The trial court determined that the evidence was material and, further, found that its probative value outweighed any undue prejudice.

At trial, the prosecutor asked witness Eason whether she remembered "speaking with Detective Garibay about an incident that happened at [the] Tijuana [B]ar about six months prior to this?" Eason answered, "No." But on cross-examination, Eason acknowledged that she had spoken to someone from defense counsel's office about an incident "that involved [appellant] and someone named Chito or something like that" and that the incident "was at a bar and then Chito attacked [appellant] with a knife and they both wound up stabbed...." The prosecution re-called Garibay, who testified that Eason told him "that she was aware of an incident that occurred at a bar where a person by the name of Chito was stabbed by Checko, ... and that she also stated that it was an unreported incident because they were cousins...." Garibay testified that he thought Eason had told him that Checko stabbed his cousin in the abdomen, and that she did not say it was in self-defense.

In closing argument, the prosecutor referred briefly to the other stabbing incident:

"... [Appellant] is charged in Count 2 ... with assault with a deadly weapon. In order to prove [appellant] assaulted the victim with a deadly weapon, the People must prove, one, [appellant] did an act with a deadly weapon that by its nature would directly and probably result in the application of force to Alejandro [Blanco]. We have a knife. We have someone take it out, and we have someone make a stabbing lurking [ *sic* ] motion at someone else. I submit to you it's clear that he's going ... to apply force to someone, he's right there by his body, he's using all his momentum, all his weight and putting it into someone else's body. He knows it's going to apply force. Again, he's done it before. He stabbed someone before. He knows what a knife does when it enters someone's body."

Evidence Code section 1101, subdivision (b)

> Generally, evidence of a defendant's bad character is not admissible to prove he or she acted in conformity with that character on a specified occasion. (Evid.Code, § 1101, subd. (a).) Under Evidence Code section 1101, subdivision (b), however, uncharged criminal acts are admissible to prove, among others things, the absence of mistake or accident, or the intent possessed by the perpetrator, in commission of the charged offense. "[A]dmissibility [of other crimes evidence] depends upon three principal factors: (1) the *materiality* of the fact sought to be proved or disproved; (2) the *tendency* of the uncharged crime to prove or disprove the material fact; and (3) the existence of any *rule* or *policy* requiring the exclusion of relevant evidence." (*People v. Thompson* (1980) 27 Cal.3d 303, 315, italics in original.)
>
> The trial court's decision to admit this evidence is discretionary and, therefore, is reviewed for an abuse of discretion on appeal. (*People v. Kipp* (1998) 18 Cal.4th 349, 369 ["trial court's determination of this issue, being essentially a determination of relevance, is reviewed for an abuse of discretion"].)
>
> Determining whether evidence of uncharged misconduct is relevant to prove a disputed issue often requires that the court examine the degree of similarity between the uncharged misconduct and the charged offense. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.) Generally, the least degree of similarity between the uncharged act and the charged offense is required to prove intent. "Evidence of *intent* is admissible to prove that, if the defendant committed the act alleged, he or she did so with the intent that comprises an element of the charged offense." ( *Id.* at p. 394, fn. 2.) Uncharged misconduct is only admissible to prove intent, however, if the crimes are " 'sufficiently similar to support the inference that the " 'defendant probably harbor[ed] the same intent in each instance." ' " ' (*People v. Earley* (2004) 122 Cal.App.4th 542, 547.) In proving intent, " 'the act is conceded or assumed; what is sought is the state of mind that accompanied it.' [Citation .]" (*People v. Ewoldt, supra,* at p. 394, fn. 2.) Thus, the recurrence of similar misconduct " 'tends (increasingly with each instance) to negative accident or ... other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act.' [Citation.]" (*Id.* at p. 402.)
>
> Applying these principles, we find that the trial court did not abuse its discretion in admitting appellant's prior stabbing incident. The current stabbing and the prior stabbing shared some characteristics. The two incidents occurred within six or seven months of each other. In both, appellant was in possession of a knife with which he stabbed another individual during an altercation. And in both, appellant fled the scene after the stabbing occurred. [FN2] While the two incidents may not be sufficiently similar or distinctive to show a common plan or scheme, or identity through a modus operandi, they are sufficiently similar to show the absence of accident or mistake, and thus are relevant to the issue of intent.
>
> FN2. Neither Eason nor Detective Garibay testified that appellant fled after the stabbing in the uncharged act. This evidence was brought before the court by the prosecutor during the hearing on the motion.
>
> Appellant claims, nonetheless, that the evidence was inadmissible because intent was not an issue at trial; assault by means of force likely to produce great bodily injury is a general intent crime. (*People v. Tran* (1996) 47 Cal.App.4th 253, 261.) While appellant is correct in the premise that assault by means of force likely to produce great bodily injury is a general intent crime, the prosecution still

must prove that the defendant did not act by accident or mistake. ( *People v. Griggs* (1989) 216 Cal.App.3d 734, 739-740.) Evidence that appellant had stabbed another person in a fight at a bar would tend to show this general criminal intent.

Evidence Code section 352

As appellant points out, he never asserted mistake or accident in defense. We agree with appellant that, because of this fact, the probative value of the other offense evidence was reduced. We do not agree, however, that the trial court abused its discretion in weighing the Evidence Code section 352 considerations.

Evidence Code section 352 only applies to prevent undue prejudice-that is, " ' "evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues" ' not the prejudice 'that naturally flows from relevant, highly probative evidence.' [Citations.]" (*People v. Padilla* (1995) 11 Cal.4th 891, 925, overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.) In addition, even where the possibility of undue prejudice exists, it must be weighed against the relevance of the evidence, and exclusion is required only where the possibility of prejudice outweighs relevance. (*People v. Ewoldt, supra,* 7 Cal.4th at p. 404.)

Several factors affect the analysis under Evidence Code section 352. "The principal factor affecting the probative value of an uncharged act is its similarity to the charged offense." (*People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1211.) Other factors include "the extent to which the source of the evidence is independent of the charged offense, and the amount of time between the uncharged acts and the charged offense." (*Ibid.*) The factors affecting the prejudicial effect of the uncharged acts include "whether the uncharged acts resulted in criminal convictions and whether the evidence of uncharged acts is stronger or more inflammatory than the evidence of the charged offenses." (*Ibid.*)

This court will not disturb a trial court's exercise of discretion under Evidence Code section 352 absent a showing the court acted in an arbitrary, capricious, or patently absurd manner that resulted in a miscarriage of justice. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)

Here, as discussed above, the uncharged stabbing and the current stabbing shared some similarities. The incidents occurred within months of each other, occurred in similar circumstances (a fight at a bar), and ended when appellant fled the scene.

As to the prejudice, we note that the prior act was not more inflammatory than the charged incident. The prior act did not result in a criminal conviction; Detective Garibay testified that the incident was unreported. Further, evidence of the prior act required no undue consumption of time or potential confusion of the issues. (*People v. Ewoldt, supra,* 7 Cal.4th at p. 404.)

We conclude for these reasons that the trial court did not abuse its discretion when it rejected appellant's Evidence Code section 352 objection.

Prejudice

Even were we to agree with appellant and find that the trial court erred in admitting the prior incident, we nonetheless would conclude that any error was

harmless under the standard of *People v. Watson* (1956) 46 Cal.2d 818.

The evidence of appellant's guilt was overwhelming. Lopez witnessed the altercation between Eason and Blanco and saw appellant stab Blanco. After the incident, appellant fled the scene.

Also, the record contains an indication that admission of the other-stabbing evidence did not prejudice the jury against appellant. Though the jury's deliberations were very short, it acquitted appellant of the attempted murder charge and convicted him only of the aggravated assault.

Nothing in the record, or missing from it, leads us to think it is reasonably probable the jury would have acquitted appellant of the assault had evidence of the prior stabbing been excluded. The admission of the prior stabbing incident did not result in any miscarriage of justice which compels reversal of appellant's conviction.

Due Process

Finally, we need not address appellant's contention that admission of the prior stabbing evidence violated his due process right to a fair trial. Defense counsel did not object to the evidence in question on the basis that admitting it would violate appellant's due process rights. Rather, counsel argued that the evidence was not relevant and would be more prejudicial than probative, under Evidence Code section 352. The failure of counsel to raise a constitutional challenge to the admission of the Evidence Code section 1101 evidence constitutes forfeiture of the issue on appeal, since he did not give the trial court the opportunity to correct the alleged error. (See Evid.Code, § 353; *People v. Kipp* (2001) 26 Cal.4th 1100, 1124-1125.) In any event, in view of our analysis here, appellant's constitutional claim would fail.
(Lod. Doc. 5 at 4-10.)

1. Procedural Default

As demonstrated, the Court of Appeal addressed the issue on the merits based on Petitioner's claim that admission of the evidence violated California law. The appellate court declined to reach Petitioner's constitutional due process claim based on admission of the evidence because he did not object to such evidence at trial and therefore forfeited the claim.

A federal court will not review a petitioner's claims if the state court has denied relief of those claims pursuant to a state law that is independent of federal law and adequate to support the judgment. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Coleman v. Thompson, 501 U.S. 722, 729-30 (1989); see also Fox Film Corp. v. Muller, 296 U.S. 207, 210 (1935). A state court's refusal to hear the merits of a claim because of petitioner's failure to follow a state procedural rule is considered a denial of relief on independent and adequate state grounds. Harris v. Reed, 489 U.S. 255, 260-61 (1989). This doctrine of procedural default is based on the concerns of

comity and federalism. Coleman, 501 U.S. at 730-32.

A federal court may only impose a procedural bar on claims if the procedural rule that the state used to deny relief is "firmly established and regularly followed." O'Dell v. Thompson, 502 U.S. 995, 998 (1991) (statement of Blackmun joined by Stevens and O'Connor respecting the denial of certiorari); Ford v. Georgia, 498 U.S. 411, 423-24 (1991); James v. Kentucky, 466 U.S. 341, 348-51 (1984). The state procedural rule used must be clear, consistently applied, and well-established at the time of the petitioner's purported default. Fields v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997); Calderon v. United States Dist. Court (Bean), 96 F.3d 112, 129 (9th Cir. 1996), *cert. denied,* 117 S.Ct. 1569.

In this case, the appellate court refused to consider this claim pursuant to California's contemporaneous objection rule, because Petitioner failed to challenge the admission of the evidence at trial. California's contemporaneous objection rule is consistently applied independent of federal law. See Inthavong v. Lamarque, 420 F.3d 1055, 1058 (9th Cir. 2005); Paulino v. Castro, 371 F.3d 1083, 1092-1093 (9th Cir. 2004); Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir.2002); Vansickel v. White, 166 F.3d 953, 957 (9th Cir.1999). Petitioner makes no showing that the contemporaneous-objection rule was not an adequate and independent basis for its decision. In addition, Petitioner has not shown cause for the default or prejudice resulting from it, or that a fundamental miscarriage of justice would occur if this claim is not heard. Nor has Petitioner presented any evidence establishing his actual innocence. Therefore, Petitioner is procedurally barred from bringing this claim. In any event, the claim fails on the merits.

2. Lack of Clearly Established Supreme Court Precedent

In Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009), the Ninth Circuit found there is no clearly established Federal law that prohibits erroneous admission of evidence. In reaching this decision, the Court stated as follows:

> Under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by "clearly established Federal law," as laid out by the Supreme Court. 28 U.S.C. § 2254(d). In case where the Supreme Court has not adequately addressed a claim, this court cannot use its own precedent to find a state court ruling unreasonable. [*Carey v. Musladin*, 549 U.S. 70, 77 (2006).]

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, [*see Williams v. Taylor*, 529 U.S. 362, 375 (2005),] it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such "clearly established Federal law," we cannot conclude that the state court's ruling was an "unreasonable application." [*Carey v. Musladin*, 549 U.S. at 77.] Under the strict standards of AEDPA, we are therefore without power to issue the writ on the basis of Holley's [admission] claims.

The Supreme Court has declined to hold that evidence of other crimes or bad acts "so infused the trial with unfairness as to deny due process of law." Estelle v. McGuire, 502 U.S. 62, 75, n.5 (1991) (noting that the Court "express[ed] no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"). The Court has also left open the question of whether the admission of propensity evidence violates due process. Id. Because the Supreme Court has declined to address the issue, the Ninth Circuit has repeatedly held that a state court's rejection of a due process violation based on the admission of prior crimes or bad acts is not an unreasonable application of clearly established federal law. See e.g. Alberni v. McDaniel, 458 F.3d 860, 866-867 (9th Cr. 2006); accord Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008); (reaffirming Alberni); Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008).

3. Lack of Merit

Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a federal habeas corpus proceeding. Estelle, 112 S.Ct. at 477; Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985). Nevertheless, there can be habeas relief for the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a denial of due process. Estelle, 112 S.Ct. at 482; Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 874 (1984); Walters v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993), Gordon v. Duran, 895 F.2d 610, 613 (9th Cir.1990). However, the failure to comply with state rules of evidence alone is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. Jammal v. Van de Kamp, 926 F.2d 918, 919-920 (9th Cir. 1991). Only if there are no permissible inferences that the jury may draw from the evidence can

its admission rise to the level of a due process violation. Id. at 920. Intent is a permissible inference that the jury may draw from the evidence of prior bad acts. See Houston v. Roe, 177 F.3d 901, 910 n. 6 (9th Cir. 1999).

Here, the admission of Eason's testimony regarding Petitioner's prior stabbing of his cousin was properly admitted for the limited purpose of proving intent. The trial court noted the similarities between the prior and current stabbing and found it was relevant to Petitioner's criminal intent. Therefore, a reasonable jury could have drawn permissible inferences that the current stabbing was not done by accident or mistake. Thus, the admission of this evidence did not violate Petitioner's constitutional rights. See Estelle, 502 U.S. at 75 ("prior injury" evidence is admissible if use is "parallel to the familiar use of evidence of prior acts for the purpose of showing intent, identity, motive, or plan"); Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (acknowledging propensity evidence is admissible if relevant).

D. Admission of Unknown Declarants' Hearsay Statements

Petitioner contends his due process rights were violated when the trial court admitted statements of unknown declarants.

In the last reasoned decision, the California Court of Appeal denied the claim stating:

> Borrero testified that, when she came out of the bar just after the stabbing, she heard people saying that "Checko did it" Blanco testified that, when he was stabbed, he could not see his assailant but he could hear people yelling that "Checko did it." Appellant contends that this evidence was inadmissible hearsay and that its admission was reversible error. In supplemental briefing, appellant argues the testimony violated his Sixth Amendment and due process rights to confrontation under *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford* ). We disagree.
>
> Procedural and Factual Background
>
> Borrero testified that she knew appellant as Checko and that he had dated her sister. Borrero saw appellant in the bar on the night of the incident, and he sat at a table next to her. Borrero was inside the bar when the stabbing occurred because she used the restroom before leaving the bar at closing time. When she came out of the restroom, appellant was no longer in the bar and, when she went outside, she heard "everybody" talking about what had happened.
> Defense counsel objected to this line of questioning on hearsay grounds. The prosecutor stated that the statement "comes in under spontaneous statement," and that the previous witness (Lopez) had testified that Borrero walked out of the bar immediately after the stabbing. The trial court overruled the objection and found the statement was a spontaneous statement.

Borrero was again asked if she heard people making statements as to who stabbed the victim, and Borrero stated, “They were saying that Checko did it....” Defense counsel moved to strike the statement. The trial court clarified with Borrero that she heard the statement “immediately at the time of the stabbing,” and again overruled the objection.

On cross-examination, defense counsel asked Borrero if she knew when the stabbing occurred, to which she answered, “No, I don't.” Defense counsel renewed his objection, stating there was no evidence or verification to support that the statement was made right after the stabbing occurred. The trial court disagreed:

“No, there's more than enough circumstantial evidence to establish that the people were leaving the building right after the event occurred, and that the statements that they said when they got out, the spontaneous statements, so the objection is overruled again .”

Borrero's testimony interrupted Blanco's, and when Blanco's testimony resumed, defense counsel asked him, “When you were on the ground after being stabbed, did you hear people around yelling, ‘Checko did it’?” Blanco answered, “Yes.”

Evidence Code section 1240

We first address appellant's claim that the statement “Checko did it” does not qualify under the exception set forth in Evidence Code section 1240 because there is no evidence that the unknown hearsay declarants personally perceived the stabbing, and there was no showing of their mental state.

Evidence Code section 1240 provides an exception to the hearsay rule for spontaneous declarations. In order to qualify as a spontaneous declaration, “ ‘(1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it.’ [Citations.]” (*People v. Poggi* (1988) 45 Cal.3d 306, 318; see *People v. Brown* (2003) 31 Cal.4th 518, 540-541.)

“[A] hearsay statement, even if otherwise spontaneous, is admissible only if it relates to an event the declarant perceived personally.” (*People v. Phillips* (2000) 22 Cal.4th 226, 235.) “Although this does not require direct proof that the declarant actually witnessed the event and a persuasive inference that he did is sufficient, the fact that the declarant was a percipient witness should not be purely a matter of speculation or conjecture.” (*Ungefug v. D'Ambrosia* (1967) 250 Cal.App.2d 61, 68.) But the fact a declarant's identity is unknown does not preclude admission of a spontaneous statement. (*People v. Gutierrez* (2000) 78 Cal.App.4th 170, 177-178; *People v. Anthony O.* (1992) 5 Cal.App.4th 428, 436.)

Whether the requirements of Evidence Code section 1240 are met is largely a question of fact within the discretion of the trial court, and “ ‘each fact pattern must be considered on its own merits....' “ (*People v. Riva* (2003) 112 Cal.App.4th 981, 995; see *People v. Poggi, supra,* 45 Cal.3d at p. 318.) The “foundation, or preliminary fact [required to admit a spontaneous declaration], require[s] only proof by a preponderance of the evidence. [Citation.] In making its factual determination the trial court exercises discretion. [Citation.] If substantial evidence supports the exercise of that discretion we must uphold it. [Citation.]”

(*People v. Anthony O., supra,* 5 Cal.App.4th at pp. 433-434.)

Substantial evidence supports the trial court's ruling. There is sufficient evidence that, regardless of who the declarant was, whoever made the statement actually witnessed the stabbing. Lopez testified that there were "a lot of people" in the parking lot at the time of the stabbing. Borrero testified that when she came out of the bar there were approximately 30 people in the parking lot.

In *People v. Provencio* (1989) 210 Cal.App.3d 290, a child's statement, "There goes Angel,'" made as the child saw a burglary suspect fleeing, was properly admitted as a spontaneous declaration. (*Id.* at pp. 300-302.) In *Provencio,* a series of burglaries had been committed in a neighborhood. One of two suspects was apprehended, and the other was being sought as a crowd of neighbors stood on the street discussing the burglary. A group of children were standing across the street. One of the children screamed " 'there goes Angel'" as the defendant ran off. ( *Id.* at p. 300.) *Provencio* held the child's statement was properly admitted as a spontaneous declaration, although the child's identity was unknown. From the child's statement, the "only reasonable inference [was] that the hearsay declarant (the unidentified child) actually perceived the exciting event at the time announced." (*Id.* at p. 303.) As in *Provencio,* here it was reasonable to conclude that whoever made the statement actually perceived the stabbing.

Further, the statements were made within minutes of the stabbing, before anyone had a chance to reflect or contrive. (See, e.g., *People v. Brown, supra,* 31 Cal.4th at p. 541 [statement made two and one-half hours after a shooting was properly admitted as a spontaneous declaration]; *People v. Gutierrez, supra,* 78 Cal.App .4th at pp. 176, 178 & fn. 8 [statement written within three to four minutes of robbery]; *People v. Poggi, supra,* 45 Cal.3d at p. 319 [statement made within 30 minutes of attack].)

In sum, substantial evidence supported the trial court's ruling that the statement was admissible as a spontaneous declaration.

Prejudice

We find appellant hard pressed to complain about admission of the statement "Checko did it" because, although defense counsel objected to its admission during Borrero's testimony, it was appellant's own counsel who asked Blanco if he had heard the statement, to which Blanco responded, "Yes." In any event, even were we to agree with appellant and find that error occurred, we nonetheless would conclude that it is not "reasonably probable that a result more favorable to [appellant] would have been reached in the absence of the error" under *People v. Watson, supra,* 46 Cal .2d at page 836.

The evidence of appellant's guilt was strong. Lopez witnessed the altercation between Eason and Blanco and saw appellant stab Blanco. After the incident, appellant fled the scene.

(Lod. Doc. 5 at 10-14.)

1. <u>Procedural Default</u>

As previously stated, the procedural default doctrine bars review of a petitioner's federal habeas claim when the claim was rejected in state court based on an adequate and independent

state procedural bar. Coleman v. Thompson, 501 U.S. at 729-730. California's contemporaneous objection rule is consistently applied independent of federal law. See Inthavong v. Lamarque, 420 F.3d 1055, 1058 (9th Cir. 2005); Paulino v. Castro, 371 F.3d 1083, 1092-1093 (9th Cir. 2004); Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir.2002); Vansickel v. White, 166 F.3d 953, 957 (9th Cir.1999). Here, the California Court of Appeal clearly invoke the contemporaneous objection rule by stating Petitioner "forfeited this right" because "counsel never objected to the admission of the statement on this ground in the trial court." (Lod. Doc. 5 at 14.) In addition, Petitioner has not shown cause for the default or prejudice resulting from it, or that a fundamental miscarriage of justice would occur if this claim is not heard. Nor has Petitioner presented any evidence establishing his actual innocence. Therefore, Petitioner is procedurally barred from bringing this claim. Nonetheless, the claim is without merit.

2. Merits of Claim

Any claim that the unknown declarants' statements were inadmissible as a matter of California law, is not a cognizable federal issue. Alleged errors in the application of state law are not cognizable on federal habeas review. See 28 U.S.C. §2254(a); Estelle, 502 U.S. at 67-68. Moreover, this Court is bound by the California Court of Appeal's finding that, as a matter of California law, the unknown declarants' statements that "Checko did it," constituted spontaneous statements. Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

Notwithstanding the procedural bar to the claim, it fails on the merits. The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. The unknown declarants' statements that "Checko did it," were not testimonial because they were not made to another bystander, not to a government official. The statements were not made as part of a police investigation or any judicial proceeding. The Court of Appeal reasonably concluded the Confrontation Clause is not implicated in this instance because the unknown declarants' statements Barrero heard were nontestimonial.

In any event, Petitioner has not shown any alleged error by the trial court in admitting the statements had a "substantial and injurious effect or influence in determining the jury's verdict."

See Forn v. Hornung, 343 F.3d 990, 999 (9th Cir. 2003) (acknowledging that Confrontation Clause violations are subject to harmless error analysis and the Brecht standard is applicable). Factors to be considered in assessing the harmlessness include the importance of the testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony, the extent of cross-examination permitted, and the overall strength of the prosecution's case. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).

Even if it is assumed Petitioner's right to confrontation was violated by his inability to cross-examine the unknown declarants, any error was harmless. There was strong evidence of Petitioner's guilt independent of these statements. Lopez testified that she witnessed Petitioner stab Blanco. She also stated that Petitioner was wearing a gray turtleneck during the stabbing. Although Barrero did not see the stabbing, she knew Petitioner as "Checko" and confirmed that he was wearing a gray turtleneck that evening. Blanco did not see the person who stabbed him, but heard people yell, "Checko did it." In light of this strong evidence, it cannot be said that Petitioner's inability to cross-examine the unknown declarants' statements had a substantial and injurious effect or influence in determining the jury's verdict.

ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1. The instant petition for writ of habeas corpus is DENIED;

2. The Clerk of Court be directed to enter judgment in favor of Respondent; and

///

///

///

///

///

///

///

///

3. The Court declines to issue a certificate of appealability. 28 U.S.C. § 2253(c);

Slack v. McDaniel, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," i.e., when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong"; Hoffman v. Arave, 455 F.3d 926, 943 (9th Cir. 2006) (same). In the present case, the Court finds that reasonable jurists would not find it debatable that the state courts' decision denying Petitioner's petition for writ of habeas corpus were not "objectively unreasonable."

IT IS SO ORDERED.

**Dated: July 7, 2011** **/s/ Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE